2009 OK CIV APP 28

**COMPSOURCE OKLAHOMA,**
**Plaintiff/Appellant,**

v.

**L & L CONSTRUCTION, INC.,**
**Defendant/Appellee,**

and

**Granite Farmers Cooperative Association; Maria G. Valdes; A–Mac Oilfield Pipe Inspection, Inc.; Wanda Berrera; Fidel Solis; Beth Carriker; Katie Lynn De-Buhr, now Jackson; Cassandra Monroe; and Kirsten M. DeBuhr, Defendants.**

**Nos. 105,629, 105,641.**

Court of Civil Appeals of Oklahoma, Division No. 3.

Nov. 7, 2008.

Rehearing Denied Dec. 24, 2008.

Certiorari Denied March 11, 2009.

George W. Dahnke, Abowitz, Timberlake & Dahnke, P.C., Oklahoma City, OK, for Plaintiff/Appellant CompSource.

David E. Strecker, Jessica C. Ridenour, Strecker & Associates, Tulsa, OK, for Defendant/Appellee L & L Construction.

KENNETH L. BUETTNER, Presiding Judge.

¶ 1 These consolidated appeals are before this Court on counter-motions for summary judgment filed as a consequence of Plaintiff/Appellant CompSource's (CompSource) Petition for Declaratory Judgment.[1] CompSource requested a determination that, as a matter of law, it did not have a duty to indemnify, defend, or compensate any of the Defendants because the Workers Compensation and Employers Liability policies issued by CompSource do not afford coverage for intentional torts as defined by *Parret v. Unicco Service Company*, 2005 OK 54, 127 P.3d 572. Defendant/Appellee L & L Construction, Inc. (L & L Construction) was the employer of Terry L. Debuhr (DeBuhr) who was killed by toxic fumes (hydrogen sulfide biproducts) while performing his job. L & L Construction carries workers' compensation insurance with CompSource. After DeBuhr's

1. The appeals survive under No. 105,629. CompSource is Plaintiff/Appellant in No. 105,629 and Plaintiff/Appellee in 105,641. L & L Construction is Defendant/Appellee in 105,629 and Defendant/Appellant in 105,641. The parties on appeal presented nearly the same records pursuant to Supreme Court Rule 1.36, "Accelerated procedure for summary judgments and certain dismissals," except that No. 105,641 contains a transcript of the motion proceedings held November 30, 2007.

estate was awarded workers' compensation death benefits, it filed a lawsuit in Creek County against L & L Construction for failing to use proper training, equipment, procedure and safety, and failing to procure and maintain preventive measures. There was also a claim that the activity was ultrahazardous. CompSource declined to defend L & L Construction in the Creek County lawsuit on the ground that the policy issued only required CompSource to pay workers' compensation awards and there was no further obligation pursuant to Section C of the policy, "Exclusions." The trial court granted summary judgment in favor of CompSource because the policy excluded from coverage intentional torts arising under *Parret.* The order also stated that the pleadings in the Creek County case contained allegations of strict liability and negligence, both covered by the policy, and therefore CompSource had a duty to defend L & L on those causes of action. Both parties appealed. We affirm the summary judgment in favor of CompSource, and reverse the summary judgment in favor of L & L and render judgment in favor of CompSource with respect to the duty to defend.

¶ 2 With respect to the standard of review of a declaratory judgment, the *Oklahoma Supreme Court stated in Oklahoma City Zoological Trust v. State ex rel. Public Employees Relations Board,* 2007 OK 21, ¶ 5, 158 P.3d 461, 463:

> A declaratory judgment of a competent court is "reviewable in the same manner as other judgments." [Citing *City of Chandler v. State ex rel. Dept. of Human Services,* 1992 OK 137, ¶ 9, 839 P.2d 1352, 1354.] We hence review the record to determine if the trial court abused its discretion in construing the statute in the manner in which it did or its decision is contrary to the evidence adduced. An abuse of discretion takes place when the decision is based on an erroneous interpretation of the law, on factual findings that

are unsupported by proof, or represents an unreasonable judgment in weighing relevant factors. This court will decline to affirm only those trial court's decisions which do not conform to the law's standard of correctness.

¶ 3 On February 16, 2007, L & L filed an Answer and Counterclaim to CompSource's Petition for Declaratory Judgment, in which it requested a declaration of its right to be insured under Part Two of the Employer's Liability Insurance Policy (Policy). L & L Construction alleged that the set of facts and circumstances which gave rise to the underlying action are intended to be covered by the Policy.

¶ 4 The underlying action, filed by the widow of the decedent, Katie Lynn DeBuhr, in the Fall 2005,[2] alleges that DeBuhr, an employee of L & L Construction, was working at the Tulsa Southside Wastewater Treatment Plant August 10, 2004, applying a type of coating marketed by Raven to the inside of the primary clarifier junction, a space defined by OSHA as a "permit required confined space." At about 4:45 p.m., DeBuhr entered the workspace to retrieve some equipment and was overcome by hydrogen sulfide, losing consciousness, and striking his head on concrete within the space. He died later that evening. With respect to L & L Construction, the petition further alleges that L & L was responsible for properly educating, training, and protecting its employees, and failed to do so, stating that L & L Construction knew or should have known of the existence of hydrogen sulfide byproducts at a wastewater treatment plant and the life-threatening toxic properties of the gas. Specifically, the petition alleges that "... [t]he death of decedent was a substantially certain result of the failure of L & L to properly educate, train and protect decedent in conjunction with its knowledge of the lethal properties of hydrogen sulfide gases and decedent's exposure to them while working at a wastewater treatment plant."

---

2. KATIE LYNN DEBUHR, now JACKSON, an individual and as next friend of NATHANIEL L. DEBUHR, CASSANDRA MONROE, and KIRSTEN M. DEBUHR, *Plaintiff v. L & L CONSTRUCTION, INC., CITY OF TULSA, RAVEN LINING SYSTEMS, INC., and COHESANT*

*TECHNOLOGIES, INC.,* Defendants, District Court of Creek County, Case No. CJ–2005–1112. Despite numerous copies of the petition filed in the record submitted for review, not one includes a legible file-stamp date. The petition was verified by Katie DeBuhr October 18, 2005.

The petition states that L & L Construction received 16 OSHA citations for this incident.

¶ 5 Part One of the Policy is entitled "WORKERS' COMPENSATION INSURANCE." The parties agree that CompSource fulfilled its contractual obligation to L & L Construction with payment of DeBuhr's workers' compensation death benefits.

¶ 6 Part Two covers "EMPLOYERS' LIABILITY INSURANCE." Part Two states:

### A. How this Insurance Applies

This Employers' Liability Insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1. The bodily injury must arise out of and in the course of the injured employee's employment by you.

2. The employment must be necessary or incidental to your work in a state or territory listed in item 3.A of the Informational Page.

3. Bodily injury by accident must occur during the policy period.

\* \* \*

5. If you are sued, the original suit and any related legal actions for damages for bodily injury by accident or by disease must be brought in the United States of America, its territories or possessions, or Canada.

### B. We will Pay

We will pay all sums you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this Employers' Liability Insurance.

The damages we will pay, where recovery is permitted by law, include damages:

1. for which you are liable to a third party by reason of a claim or suit against you by that third party to recover the damages claimed against such third party as a result of injury to your employee;

2. for care and loss of services; and

3. for consequential bodily injury to a spouse, child, parent, brother, or sister of the injured employee; provided that these damages are the direct consequence of bodily injury that arises out of and in the course of the injured employee's employment by you; and

4. because of bodily injury to your employee that arises out of and in the course of employment, claimed against you in a capacity other than as employer.

### C. Exclusions

This insurance does not cover:

1. liability assumed under a contract. This exclusion does not apply to a warranty that your work will be done in a workmanlike manner;

2. punitive or exemplary damages because of bodily injury to an employee employed in violation of law;

3. bodily injury to an employee while employed in violation of law with your actual knowledge or the actual knowledge of any of your executive officers;

4. any obligation imposed by a workers' compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law;

5. bodily injury intentionally caused or aggravated by you;

\* \* \*

7. damages arising out of emotional distress, coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, retaliation, discrimination against or termination of any employee, or damages arising out of any personnel practices, manuals, contracts, policies, benefits, acts, or omissions. This exclusion applies whether or not the enumerated damages arise from a violation of any statute, ordinance or regulation.

\* \* \*

11. fines or penalties imposed for violation of federal or state law; and

\* \* \*

### D. We Will Defend

We have the right and duty to defend, at our expense, any claim, proceeding or suit against you for damages payable by this

insurance. We have the right to investigate and settle these claims, proceedings and suits.

We have no duty to defend a claim, proceeding or suit that is not covered by this insurance. We have no duty to defend or continue defending after we have paid our applicable limit of liability under this insurance.

¶ 7 Both parties filed motions for summary judgment. We review those motions *de novo*. *Carmichael v. Beller*, 1996 OK 48, 914 P.2d 1051.

¶ 8 CompSource filed its Motion for Summary Judgment and Brief July 26, 2007, based on the "legal backdrop" of (1) the intentional act exception to the Workers' Compensation Act coverage of accidental injuries; (2) the *Parret* decision; and (3) the insurance policy. CompSource denied liability on the grounds that:

A. CompSource has no duty to indemnify L & L because the claims asserted in the underlying action, by definition could only be asserted if the injury was not due to accident;

B. CompSource has no duty to indemnify L & L because the alleged conduct of L & L falls within the scope of the intentional injury exclusion of the policy;

C. Extension of coverage to claims based on *Parret's* substantial certainty definition of intent would violate the public policy rationale for the *Parret*.decision; and

D. Because the CompSource policy does not afford coverage for the claim asserted in the underlying action, CompSource has no duty to defend L & L.

¶ 9 In support of its motion for summary judgment, CompSource attached a copy of the petition in Creek County (underlying case); a copy of the December 6, 2005 letter from CompSource to Mr. Gardner (L & L Construction), stating that CompSource was denying any coverage, except pursuant to Part A of the Policy, because certain of the exclusions were applicable; and an affidavit stating that CompSource had paid the De-Buhrs' workers' compensation claim for death benefits.

¶ 10 On October 12, 2007, L & L Construction filed its Motion for Summary Judgment asserting that CompSource's Employers' Liability Policy provides coverage because (1) application of the rules of insurance contract interpretation; (2) DeBuhr's death was the result of an accident; and (3) the intentional act exclusionary clause does not preclude coverage because L & L did not intend the death. L & L Construction also alleged that CompSource has a duty to defend L & L in the underlying case because (1) the duty to defend arises out of the facts alleged in the petition; (2) the intentional act exclusion does not apply to the duty to defend; and (3) at a minimum, public policy dictates that CompSource defend under a reservation of rights clause. L & L Construction further contended that by refusing to defend L & L, CompSource breached the Policy. Finally, L & L Construction asserted that CompSource has a duty to indemnify L & L Construction if L & L is found liable for DeBuhr's accident.

¶ 11 In support of its Motion for Summary Judgment, L & L Construction attached a copy of the Policy, the petition in the underlying case, and the December 6, 2005 denial letter from CompSource.

¶ 12 Keeping in mind the standard of review with respect to declaratory judgments, and that which is necessary in order to prevail on motions for summary judgment, this Court must determine whether the trial court abused its discretion in construing the law, or in this case, the contract, or whether its decision was contrary to the evidence adduced.

¶ 13 Although the parties' seminal propositions concern whether there was a proper filing in District Court of a tort not subject to the exclusive jurisdiction of the Workers' Compensation Court,[3] based on the

**3.** Written in response to a certified question from the United States District Court, Western District of Oklahoma, with respect to the amount of intent necessary to satisfy the rule that an injured employee may seek damages for intentional torts in district courts, *Parret v. UNICCO*, 2005 OK 54, 127 P.3d 572, has been perceived as an enlargement of the rule. The Oklahoma Supreme Court did not enlarge the intentional tort exception to the exclusivity rule of the Workers' Compensa-

evidence submitted, we find that the matter is properly decided by review of the Policy. The district court, and thus this Court on review, has the power to interpret contracts.

¶ 14 In *Hefley v. Neely Insurance Agency, Inc.*, 1998 OK 12, 954 P.2d 135, a sole proprietor and lone employee of a ceramic tile installation operation, was injured on the job. He filed for workers' compensation benefits, but the workers' compensation court denied his claim because he had failed to carry a policy which endorsed him as an employee. Hefley, in his capacity as employer, then filed for damages in tort and contract in district court, claiming that his insurance agent was negligent in failing to advise him of the need to elect employee coverage.

¶ 15 Because the Workers' Compensation Court denied Hefley's claim and, in any event, could not have decided the contract issue, the Oklahoma Supreme Court held that there was no issue or claim preclusion. The matters filed in district court were not, and could not have been, decided by the Workers' Compensation Court. The *Hefley* Court stated "... the Workers' Compensation Court lacks authority to construe contract rights in a dispute purely between an employer and its insurance carrier." *Id.* at ¶ 10, p. 138. In the present case, because the cause stems from the Petition for Declaratory Judgment, the interested parties are the employer and its insurance carrier. Interpretation of the contract is a proper question for the district court's determination. Further, it either answers, or obviates, the question of tort liability.

¶ 16 In *May v. Mid–Century Insurance Company*, 2006 OK 100, 151 P.3d 132, the Oklahoma Supreme Court addressed whether plaintiff, a condominium unit owner, had a claim against the condominium association's insurer where the policy was issued to the association. Relying on the contract, the Court answered in the negative. It stated:

To ascertain the nature of insurer's contractual obligations to Owner, if any, we must examine the provisions of the policy. An insurance policy is a contract. The rules of construction and analysis applicable to contracts govern equally insurance policies. The primary goal of contract interpretation is to determine and give effect to the intention of the parties at the time the contract was made. In arriving at the parties' intent, the terms of the instrument are to be given their plain and ordinary meaning. Where the language of a contract is clear and unambiguous on its face, that which stands expressed within its four corners must be given effect. A contract should receive a construction that makes it reasonable, lawful, definite and capable of being carried into effect if it can be done without violating the intent of the parties. We review the meaning assigned by the trial court to a contract as a legal question. Questions of law are reviewed by a *de novo* standard. *Id.* at ¶ 22, p. 140.

¶ 17 The Policy, issued by CompSource, for insured L & L Construction, is "Exhibit A" for both parties. Having reviewed the Policy, we do not find it ambiguous or in need of judicial manipulation. We read the Policy in its plain and ordinary meaning.

█ ¶ 18 With respect to CompSource, the Policy specifically excludes from liability bodily injury intentionally caused or aggravated by an employer. Despite an attempt to avoid this clause through *Parret*, the exclusion applies to all intentional harm. Contrary to L & L's argument, *Parret* did not recognize two types of intentional tort. Rather, it clarified what kind of conduct constituted an intentional tort.

█ ¶ 19 "In order for an employer's conduct to amount to an intentional tort, the employer must have (1) desired to bring about the worker's injury, or (2) acted with the knowledge that such injury was substan-

tion Act, but clarified the standard. It set forth a definition and parameters so that there would be no blurring of the line between intentional and accidental injuries. The Court made a determined effort so that the standard would not become a wedge, allowing such causes as reckless or negligent misconduct. "In order for an

employer's conduct to amount to an intentional tort, the employer must have (1) desired to bring about the workers's injury or (2) acted with the knowledge that such injury was substantially certain to result from the employer's conduct." *Id.* at ¶ 24, p. 579.

tially certain to result from the employer's conduct." *Parret,* 127 P.3d at 579. *Parret* then held that

> Mere allegations of intentional conduct will not circumvent the Workers Compensation Act. The worker must allege facts which "plausibly demonstrate" that the employer's conduct was intentional under the "substantial certainty" standard.

127 P.3d at 579.

¶ 20 While we are not called upon to address the sufficiency of the underlying petition, for our purposes, it is enough that De-Buhr has attempted to allege an intentional tort under the Workers Compensation Act so as to avoid the exclusive remedy provision found at 85 O.S.2001 § 12.[4]

¶ 21 The policy does not cover intentional harm because Section C Exclusions so states. The trial court's order with respect to Comp-Source's Motion for Summary Judgment, in which it stated that "CompSource has no obligation under the Policy to indemnify L & L Construction for any loss that L & L Construction may suffer arising out of a determination that L & L Construction has committed an intentional tort under *Parret,*" is affirmed.

■ ¶ 22 The trial court also granted summary judgment in favor of L & L Construction on the ground the pleadings in the underlying suit contained allegations of negligence and strict liability which the trial court found were claims covered by the policy. It ordered CompSource to defend L & L Construction in the underlying action with respect to those causes of action.

---

4. The petition alleges: the death of decedent was a substantially certain result of the failure of L & L to properly educate, train and protect decedent in conjunction with its knowledge of the lethal properties of hydrogen sulfide gases and decedent's exposure to them while working at a wastewater treatment plant.

5. 85 O.S.2001 § 12 states in part:

The liability prescribed in Section 11 of this title shall be exclusive and in place of all other liability of the employer and any of his employees, any architect, professional engineer, or land surveyor retained to perform professional services on a construction project, at common law

¶ 23 Part Two—Employers Liability Insurance, Part B describes CompSource's obligation to pay under this coverage as follows:

> We will pay all sums you legally must pay as damages because of bodily injury to your employees provided the bodily injury is covered by this Employers' Liability Insurance. The damages we will pay, where recovery is permitted by law includes damages, . . . .

¶ 24 The policy then provides in Part Two, Section D:

> D. We Will Defend. We have the right and duty to defend, at our expense, any claim, proceeding or suit against you for damages payable by this insurance. We have the right to investigate and settle these claims, proceedings and suits.
>
> We have no duty to defend a claim, proceeding or suit that is not covered by this insurance. We have no duty to defend or continue defending after we have paid our applicable limit of liability under this insurance.

¶ 25 Excluded from the Part Two–Employers' Liability Insurance is:

> 4. any obligation imposed by a workers' compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law; . . . .

¶ 26 It appears the clear intent of the Policy is to cover employee injuries under Part One, and exclude employee injuries from Part Two except as separate law may allow such recovery outside the workers compensation system. Oklahoma law provides that the Workers' Compensation Act provides the exclusive remedy (85 O.S.2001 § 12) to an employee for on-the-job injuries.[5] The Oklahoma Supreme Court has provided

---

or otherwise, for such injury, loss of services, or death, to the employee, or the spouse, personal representative, parents, or dependents of the employee, or any other person. If an employer has failed to secure the payment of compensation for his injured employee, as provided for in this title, an injured employee, or his legal representatives if death results from the injury, may maintain an action in the courts for damages on account of such injury, and in such action the defendant may not plead or prove as a defense that the injury was caused by the negligence of a fellow servant, or that the employee assumed the risk of his employment, or that the injury was due to the contributory negligence of the employee; provided:

only the exception of intentional torts to the exclusivity of the Workers' Compensation Act. *Roberts v. Barclay,* 1962 OK 38, 369 P.2d 808, 809.

¶ 27 We have held above that CompSource is not liable under the Policy because the Petition alleges an intentional tort so as to avoid the exclusivity of the Workers' Compensation Act. It follows that any other claims in district court, including negligence and products liability, fall within the exclusivity of the Act, are not the obligation of the employer, i.e., they are not sums the employer legally must pay as a result of an action in district court.

¶ 28 As a result, CompSource has no duty to defend the negligence and products liabili-

(i) The immunity created by the provisions of this section shall not extend to action by an employee, or the spouse, personal representative, parents, or dependents of the employee, or any other person against another employer, or its employees, on the same job as the injured or deceased worker where such other employer does not stand in the position of an intermediate or principal employer to the immediate employer of the injured or deceased worker;

(ii) The immunity created by the provisions of this section shall not extend to action against another employer, or its employees, on the same job as the injured or deceased worker even though such other employer may be considered as standing in the position of a special master of

ty claims because those claims are not covered by the Policy. Summary judgment was erroneously entered in favor of L & L, and is hereby entered in favor of CompSource.

¶ 29 AFFIRMED IN PART, REVERSED AND RENDERED IN PART.

MITCHELL, V.C.J., and BELL, J., concur.

a loaned servant where such special master neither is the immediate employer of the injured or deceased worker nor stands in the position of an intermediate or principal employer to the immediate employer of the injured or deceased worker; and

\* \* \*

The 2005 amendment added Section (v), which states: Nothing contained herein shall abrogate any rights arising under the Oklahoma Constitution.

Because DeBuhr died in 2004, we use the law in existence at the time of his death. The amended § 12 would not have affected the present case.