WELLS v. OKLAHOMA ROOFING & SHEET METAL



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:WELLS v. OKLAHOMA ROOFING & SHEET METAL

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 WELLS v. OKLAHOMA ROOFING & SHEET METAL
2019 OK 45
Case Number: 112844
Decided: 06/18/2019
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2019 OK 45, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

CRYSTAL WELLS, individually and as Administrator of the ESTATE OF ROBERT YOUNG, Deceased, Plaintiff/Appellant,
v.
OKLAHOMA ROOFING & SHEET METAL, L.L.C., and OKLAHOMA ROOFING & SHEET METAL, INC., Defendants/Appellees.

CERTIORARI TO THE COURT OF CIVIL APPEALS, DIVISION IV

¶0 Daughter of the deceased employee brought a wrongful death action in district court against the decedent's employer for intentional tort, asserting that the decedent's employer was willful, wanton, and intentional in directing the decedent-employee to perform certain tasks that the decedent's employer knew was certain or substantially certain to result in the decedent-employee's death and sought declaratory relief that the exclusive liability provision of the Workers' Compensation Act was unconstitutional. The district court declared the Act's exclusivity provision constitutional, ultimately determined the decedent-employer's liability was exclusively governed by the Oklahoma Workers' Compensation Act, and dismissed the daughter's petition. The Court of Civil Appeals, Division IV, declared the statute constitutionally infirm as a special law in violation of Okla. Const. art. 5, §§ 46, 59. The COCA reversed the district court's order of dismissal and remanded the matter for further proceedings.

CERTIORARI PREVIOUSLY GRANTED;
OPINION OF COURT OF CIVIL APPEALS VACATED;
DISTRICT COURT ORDER REVERSED;
CAUSE REMANDED FOR FURTHER PROCEEDINGS
CONSISTENT WITH THIS OPINION.

James K. Secrest, II, Edward J. Main, SECREST, HILL, BUTLER & SECREST, Tulsa, Oklahoma, for Appellees.

Larry A. Tawwater, Darren M. Tawwater, THE TAWWATER LAW FIRM, P.L.L.C., Oklahoma City, Oklahoma, for Appellant.

Mike Hunter1, ATTORNEY GENERAL, Oklahoma City, Oklahoma.

Colbert, J.

¶1 The issue presented on certiorari review is whether intentional torts are within the purview of the workers' compensation scheme at Okla. Stat. tit. 85, § 12 (2001 and Supp. 2010)[2] and whether this part of § 12 is an unconstitutional special law in violation of Okla. Const. art. 5, §§ 46, 59.[3] Based on this Court's review of the undisputed facts, the Oklahoma Constitution, and applicable laws, we find that the portion of § 12 that includes intentional torts is not within the walls of the workers' compensation scheme or jurisdiction. This analysis applies equally to subsequent iterations found in Okla. Stat. tit. 85A, § 5(B)(2)(2013),[4] 209(B),[5] and Okla. Stat. tit. 85, § 302(B)(2011) (now repealed). Accordingly, the district court's order is reversed and the matter is remanded to the district court for further proceedings consistent with today's pronouncement.

I. BACKGROUND AND PROCEDURAL POSTURE

¶2 On June 27, 2011, Robert Young, an employee of Oklahoma Roofing & Sheet Metal, Inc., and Oklahoma Roofing & Sheet Metal, L.L.C. (collectively, Employer), was working on a roof applying a membrane roof on a three-story building when he was required by Employer to unhook his single line lanyard requiring him to cross over two coworkers. He walked ten feet beyond the point where he had unhooked his lanyard when he fell, landing on an awning thirty feet below, and then he rolled off the awning and fell onto bricks on the ground twelve feet below to his death. Prior to the date of Wells injury and death, Oklahoma Roofing and Sheet Metal, Inc., was cited for a violation related to the duty to have a sufficient fall protection system.

¶3 Crystal Wells, individually and as Administrator of the Estate of Robert Young, Deceased (Wells), commenced an action in district court seeking damages for Decedent's death and declaratory relief. Wells's first amended petition alleged Decedent's death was the result of Employer's intentional tort. Specifically, Wells alleged that Employer provided and intended Decedent to use a single-line lanyard fall-protection system that required Decedent to temporarily unhook his safety anchor in order to pass over the other co-workers working on the roof. Wells alleged that when the anchor was unhooked, the fall protection system was inoperable; and therefore, unable to prevent an employee's fall like the instant fall which led to Decedent's death. Wells alleged Employer knew the single-line system would lead to Decedent's death; that Employer's actions were willful, wanton, and intentional; that Employer was found to be a repeat violator of the Occupational and Safety Health Administration's (OSHA) safety rules; that Employer was fined by OSHA for acts related to Decedent's death;[6] and that Employer was previously cited on two[7] separate occasions "by the United States Government for violating various Federal requirements regarding the fall-protection equipment." Wells alleged Employer's actions were willful, wanton, and intentional, with specific knowledge of the dangerous and potentially lethal conditions and thus, her remedy was not limited to those benefits provided by the Workers' Compensation Act. In addition, Wells sought declaratory relief to declare the exclusivity provision of Okla. Stat. tit. 85, § 12 (2001 and Supp. 2010) unconstitutional as a special law and therefore, inapplicable to her action. Employer filed a motion to dismiss, essentially alleging that Wells's claims were barred by § 12. In relevant part, that section states:

The liability [of the Act] shall be exclusive . . . except in the case of an intentional tort, . . . . An intentional tort shall exist only when the employee is injured as a result of willful, deliberate, specific intent of the employer to cause such injury. Allegations or proof that the employer had knowledge that such injury was substantially certain to result from its conduct shall not constitute an intentional tort. The issue of whether an act is an intentional tort shall be a question of law for the court . . . . (emphasis added).

¶4 The district court declared § 12 constitutional and granted Employer's motion to dismiss. The court held that, while Wells's allegations met the "substantial certainty" element set forth in Parret v. UNICCO Serv. Co., 2005 OK 54, 127 P.3d 572, it did not satisfy the specific intent definition prescribed in § 12. Plaintiff Wells appealed.

¶5 Upon review, the COCA found that, in the context of the workers' compensation law, § 12 defined an "intentional tort" much narrower than the definition utilized in a garden-variety intentional tort action, although both types of actions are litigated in courts of general jurisdiction. As applied, § 12 created a subset of litigants and treated those litigants differently than other similarly-situated litigants. The COCA reversed the district court's determination and held § 12 unconstitutional as a special law. Employer sought certiorari review.

II. STANDARD OF REVIEW

¶6 Decedent's work-related death occurred on June 27, 2011. The law in effect at the time of Decedent's death, including claims for injuries, is governed by Okla. Stat. tit. 85, § 12 (2001 and Supp. 2010). Vasquez v. Dillard's, Inc., 2016 OK 89, ¶ 25 n.60, 381 P.3d 768, 786; Holliman v. Twister Drilling Co., 2016 OK 82, ¶ 5, 377 P.3d 133, 134.

¶7 At issue is the constitutionality and application of Okla. Stat. tit. 85, § 12 (2001 and Supp. 2010). A constitutional challenge to a statute's "validity, construction and application are legal questions this Court reviews de novo." John v. St. Francis Hosp., 2017 OK 81, ¶ 8, 405 P.3d 681, 685. De novo review is the proper standard also for reviewing the trial court's grant of a motion to dismiss. Wilson v. State ex rel. State Election Bd., 2012 OK 2, ¶ 4, 270 P.3d 155, 157 (citation omitted). Generally, motions to dismiss are "disfavored and granted only when there are no facts consistent with the allegations under any cognizable legal theory or there are insufficient facts under a cognizable legal theory." Id. Last, we assume "plenary independent and non-deferential authority to reexamine a trial court's legal rulings." John v. St. Francis Hosp., 2017 OK 81, ¶ 8, 405 P.3d 681, 685 (internal citation omitted).

III. DISCUSSION

A. Specific Intent and Substantial Certainty 
are Nomenclatures of an Intentional Tort

¶8 At the outset, it is critical to this Court's analysis to bring into focus what constitutes an intentional tort while fortifying the walls of the Oklahoma Workers' Compensation's exclusivity provision. In general, an employer's liability for an employee's injuries is limited to the exclusive purview of the Workers' Compensation Court, except in cases of an intentional injury and, although not applicable here, "where the employer has failed to secure the payment of compensation for the injured employee." Okla. Stat. tit. 85, § 12 (2001 and Supp. 2010). It is well-settled that the common law divides actionable tortious conduct into two categories: (1) accidental and (2) willful acts that result in intended or unintended harm. Graham v. Keuchel, 1993 OK 6, ¶ 49, 847 P.2d 342, 362. Parret v. UNICCO Serv. Co., reflects that dichotomy. 2005 OK 54, ¶ 12, 127 P.3d 572, 575.

¶9 In Parret, a worker died when he was electrocuted while replacing emergency lights at a job site as ordered to do by his employer even though the employee knew that the lights were "hot or energized." Id. ¶¶ 3-4, 127 P.3d at 574. This Court settled the question that only an employer's intentional acts fall outside of the Oklahoma Workers' Compensation exclusivity provision. Id. ¶ 24, 127 P.3d at 579. Our review in Parret, however, was limited in scope to the two questions certified by the Federal court. Id. ¶ 1, 127 P.3d at 573-74. Relevant here, is question one, seeking guidance on the application of Oklahoma's intentional tort standard--namely, the "true intentional tort" and "substantial certainty." Id. ¶ 9, 127 P.3d at 575.

¶10 Parret reiterated that an employer's intentional acts against its employee come within the exclusivity exception to the workers' compensation laws, as intentional acts are neither accidental in nature nor arise out of the normal course and scope of an employee/employer relationship. Id. ¶¶ 8-9, 127 P.3d at 575. There, we stressed that the legal justification for an intentional tort action at common law, is the non-accidental, deliberate character of the injury judged from the employer's subjective standpoint. Id. ¶ 24, 127 P.3d at 579. Our focus was not limited to a particular employee and the injury sustained; but rather, the employer's intentional acts or willful failure to act as contemplated by the Oklahoma Workers' Compensation scheme. Our lengthy discussion detailed the historical development of Oklahoma's workplace injuries; the Legislature's expressed act of excluding injuries not covered by the terms in the workers' compensation laws; and the balance of interests driving the legislatively created scheme to provide employees compensation for accidental injures, regardless of fault. Id. ¶ 19, 127 P.3d at 579. Cloaking an employer with immunity from liability for their intentional behavior unquestionably would not promote a safe and injury-free work environment. An employer's impunity to commit an intentional act with the knowledge that, at the very most, his workers' compensation premiums may rise slightly is not in accord with Oklahoma's public policy. Id. ¶ 22, 127 P.3d at 578. Because Oklahoma's workers' compensation laws clearly underscore and contemplate the accidental character of a workplace injury, an employer's immunity, then, cannot be stretched to include the employer's intentional acts.

¶11 Parret denotes that when an employer "(1) desire[s] to bring about the worker's injury or (2) act[s] with the knowledge that such injury was substantially certain to result from the employer's conduct," an intentional tort action will lie. Id. ¶ 24, 127 P.3d at 579. We acknowledged that "all consequences which the actor desires to bring about are intended." Id. ¶ 17, 127 P.3d at 577. That intent, whether an intentional act or intentional inaction, is, by definition, deliberate. So, because "[i]ntent denotes a desire to cause the consequences of his act that the actor knows is certain, or substantially certain to result, then under the law, the actor has in fact desired to produce the result." Id. ¶ 17, 127 P.3d at 579 (quoting 1 Restatement (Second) of Torts § 8A (1965)). Shifting our focus to the substantial certainty element, we stated that the employer not only had to intend the act that caused the injury, but also required that the employer knew that the injury was substantially certain to follow. Id. ¶ 24, 127 P.3d at 579. The employee, then, "must allege facts which 'plausibly demonstrate that' the employer's conduct was intentional . . . ." Id. The employer's knowledge "may be inferred from the employer's conduct and all the surrounding circumstances." Id. Although our limited review focused on the substantial certainty aspect of an intentional tort, we by no means "expand[ed] the narrow intentional tort exception to [the] workers' compensation exclusivity" provision. Id. ¶ 27, 127 P.3d at 579. Rather, we stated that both elements constitute an intentional tort and spoke directly to the tortfeasor's requisite mental state--that is, the employer's subjective appreciation of the resulting injury. Id. ¶ 24, 127 P.3d at 579. In short, Parret did not recognize two types or levels of intentional torts. Compsource Okla. v. L&L Construction, Inc., 2009 OK CIV APP 28, ¶ 18, 207 P.3d 415, 420. Rather, Parret clarified what kinds of conduct constitute an intentional tort. Id.

¶12 Employer contends that § 12, like its successors,[8] was a legislative response to address a perceived unwarranted expansion of the intentional tort exception to the workers' compensation laws resulting, presumably, from our decision in Parret v. UNICCO Serv. Co., 2005 OK 54, 127 P.3d 572. According to Employer, § 12 attempts to redefine the existence of intentional torts to only those that result from the "willful, deliberate, specific intent of the employer" to cause injury and excepts those injuries an employer knows are substantially certain to occur. Yet, that fallacy is premised on the specific intent and substantial certainty nomenclatures, commonly misunderstood as one being different than the other. They are not. "[W]hat appears at first glance as two distinct bases for liability is revealed on closer examination to be one and the same." Hoyle v. DTJ Enters., Inc., 36 N.E.3d 122, 127 (quoting Rudisill v. Ford Motor Co., 709 F.3d 595, 602--03 (6th Cir.2013) (describing Ohio R.C. 2745.01 as "a statute at war with itself")).

¶13 In relevant part, § 12 states: "An intentional tort shall exist only when the employee is injured as a result of willful, deliberate, specific intent of the employer to cause such injury." That is, an employer's intent to injure an employee must be willful, deliberate, and specific. But what do those words mean? In examining a legislative enactment, this Court will "construe and apply it in a manner that avoids conflict with our Constitution and give[s] the enactment the force of law." Torres v. Seaboard Foods, LLC, 2016 OK 20, ¶ 17, 373 P.3d 1057, 1066--67, as corrected (Mar. 4, 2016).

¶14 Our analysis begins with the text and context of § 12. The operative word in § 12 is "intentional." The category of intentional torts have remained unchanged since before the inception of Oklahoma's workers' compensation laws in 1915--a period in excess of a century. Adams v. Iten Biscuit Co., 1917 OK 47, 162 P. 938; see also Roberts v. Barclay, 1962 OK 38, 369 P.2d 808. The first constitutional challenge to Oklahoma's workers' compensation scheme was addressed in Adams v. Iten Biscuit Co., 1917 OK 47, 162 P. 938. In Adams, the court upheld the workers' compensation scheme as the exclusive remedy for work-related accidental injuries. Id. ¶ 17, 162 P. at 945. In determining the Act's constitutionality, we stated: "The act does not undertake to regulate willful injuries . . . but leaves the injured employee to his remedy as it existed when the act was passed. Considering the various provisions of the act together . . . [the Act] embraces all kinds of accidental injuries . . . whether occurring from the negligence of the employer or not arising out of and in the course of employment, but does not include willful or intentional injuries inflicted by the employer." Id. ¶¶ 16-17, 162 P. at 945.

¶15 In a subsequent decision, U.S. Zinc Co. v. Ross, the court clarified the Adams decision, holding that only injuries occasioned by an employer's willful and intentional injuries could not be considered accidental. 1922 OK 247, ¶ 3, 208 P. 805, 806. There, the court defined "willful" as "more than a mere act of will, and carries with it the idea of premeditation, obstinacy,[9] and intentional wrongdoing." Id. ¶ 6, 208 P. at 807 (citation omitted). By its definition, "willful" embodies intentional. Id. In context, this reading is consistent with the preceding provision that conditions an employer's liability on accidental injuries and expressly excludes injuries resulting from the "willful intention" and "willful failure" of the employee and co-employee. Id. The definition of "intentional," then, remains fixed and excluded from our compensation laws since before adoption of the compensation scheme and therefore, controls its meaning.

¶16 In the context of deliberate intent, that is an employer's deliberate intentions, the Supreme Court of Oregon stated that,

[D]eliberate intent follows as a deduction from the allegation of knowledge of the danger and the carelessness, negligence, and recklessness of defendant in not obviating it . . . . A deliberate act is one the consequences of which are weighed in the mind beforehand. It is prolonged premeditation, and the word when used in connection with an injury to another denotes design and malignity of heart. It has been defined so many times that it is difficult to select any one definition which covers every phase in which the word is used, but some of the most apt are:

"The word 'deliberate' is derived from two Latin words, which mean, literally, 'concerning,' and 'to weigh.' * * * As an adjective * * * it means that the manner of the performance was determined upon after examination and reflection--that the consequences, chances and means weighed, carefully considered and estimated."

"Deliberation is that act of the mind which examines and considers whether a contemplated act should or should not be done."

Jenkins v. Carman Mfg. Co., 79 Or. 448, 453, 155 P. 703, 705 (1916) (citations omitted). "Deliberation" is "premeditation." Id. And, the premeditated thought is described as a mental thought beforehand, for any length of time preceding an act or willful failure to act, however short. See Easley v. State, 78 Okl. Cr. 1, 8, 143 P.2d 166, 170 (1943). In order to come within § 12's exception, "it is incumbent upon an injured [employee] to establish that his employer had a deliberate intention to injure him or someone else and that he was in fact injured as a result of that deliberate intention." Kilminster v. Day Mgmt. Corp., 323 Or. 618, 631, 919 P.2d 474, 481 (1996) (citations omitted). The more difficult question is how does an injured employee demonstrate an employer's requisite statutory intent when that intent is subjective.

¶17 An employer's "specific intent" to injure, or knowledge that an injury is "substantially certainty to result," equate to an intentional tort. Both require a knowledge of foreseeable consequences and are interpreted to mean intentionally knowing culpable acts. The belief that one has a different level or degree of a tortious act, and thereby concluding that specific intent and substantial certainty are different animals, is a fallacy. "A culinary example may be more illustrative. If you make a peanut butter cookie, it is apparent that it is a smooth, one flavor cookie. It is still a peanut butter cookie even if you use crunchy peanut butter, because its major flavor is still peanuts. . . ." Douglas v. Cox Ret. Properties, Inc., 2013 OK 37, ¶ 19, 302 P.3d 789, 801 (Kauger, J., concurring specially). Yet, despite its consistency, it remains a cookie. Similarly, the major flavor of intentional tort is the actor's subjective intent to cause harm. That requisite mens rea no more ceases to be intentional merely because the actor specifically targeted a particular employee or another employee, generally. Parret recognized that point, finding that the two definitions were essentially the same and demonstrated the Legislature's intent to permit recovery for an employer's intentional acts only when an employer acts with the specific intent to cause an injury. In both instances, you must prove that the willful, deliberate, culpable act was intentional.

¶18 Specific intent, like its counterpart substantial certainty, is purely a subjective fact never susceptible to direct proof. Stated differently, showing an employer's subjective intent to engage or refusal to engage in an activity that the employer knows that injury is certain to occur requires consideration of objective facts, and from those objective facts, an ultimate conclusion is drawn. See Tiger v. Verdigris Valley Elec. Coop., 2016 OK 74, ¶¶ 14-15, 410 P.3d 1007, 1011--12. "[A]n employer's knowledge may be inferred from the employer's conduct and all the surrounding circumstances." Id. (citation omitted). Therefore, an employer's conduct and the surrounding circumstances can be established through circumstantial evidence. Estrada v. Port City Prop., Inc., 2011 OK 30, ¶ 22, 258 P.3d 495, 504. To illustrate, assume a "defendant pushes [a] plaintiff into a room, locks the door and throws away the key." § 29 The Meaning of Intent, Dan B. Dobbs, Paul T. Hayden and Ellen M. Bublick. Because "the trier of fact has no mind reading machine to determine" the defendant's subjective intent," the trier of fact is entitled to infer [from external or objective evidence] that the defendant intends to confine the plaintiff, at least for a time." Id. "[E]vidence that the defendant intended any given act may be good evidence that he also intended the results that tend to follow such an act." Id. Such a determination is clearly a question of fact that is ordinarily inferred from the employer's conduct or acts under the circumstance of a particular case. Lucenti v. Laviero, 176 A.3d 1, 11 (Conn. 2018).

¶19 We think by the words "willful, deliberate, specific intent of the employer to cause such injury" that the Legislature unequivocally intended to convey that the employer must have determined to injure an employee and used some means appropriate to that end; and that there must be a deliberate intent. It is now settled that an employer's willful, deliberate, specific intent to injure with the purpose to cause injury or which injury is substantially certain that makes an employer's act or failure to act intentional. Mere carelessness or negligence, however gross, will not suffice. However, we do not believe, as Employer contends, that the Legislature intended to bifurcate the sphere of intentional torts constitutionally reserved as common law rights of actions which predate the inception of Oklahoma's workers' compensation scheme.

¶20 At this juncture we note that there has always been disparity between the rights and remedies of persons injured while in the course and scope of their employment and those who are injured elsewhere. See Adams v. Iten Biscuit Co., 1917 OK 47, 162 P. 938. However, that disparity is properly confined within the Workers' Compensation system. Id. The original Industrial Bargain/Grand Bargain struck between employees and employers is premised on compensating employees for accidental work-related injuries regardless of fault. Id. "[T]he workers' compensation statutes were designed to provide the exclusive remedy for accidental injuries sustained during the course and scope of a worker's employment [and] were not designed to shield employers or co-employees from willful, intentional or even violent conduct." Parret, 2005 OK 54, ¶ 8, 127 P.3d 572, 575 (quoting Thompson v. Madison Machinery Co., 1984 OK CIV APP 24, ¶ 17, 684 P.2d 565, 568).

¶21 The relevant part of the 2010 version of 85 O.S. § 12 and the current version of 85A O.S. § 5 state: "Allegations of proof that the employer had knowledge that the injury was substantially certain to result from the employer's conduct shall not constitute an intentional tort." The Defendants are making the argument herein that the Legislature may rework or change the Grand Bargain where employees lost the right to bring a District Court action against their employers in exchange for the no-fault workers' compensation remedies. Invoking the legislature's power to change the Grand Bargain is going beyond merely stating an evidentiary standard to prove an intentional tort in District Court has been statutorily changed. The Employer is therefore arguing for a form of absolute immunity from legal liability for an employer when that employer intentionally injures an employee pursuant to the substantial certainty standard. In other words, it is argued the Legislature may state both an employer's intentional tort is not actionable in a District Court regardless of the nature or extent of the employee intentionally injured and the employee's injury caused by the employer has no remedy in the workers' compensation scheme; leaving the employee in a virtual no man's land when it comes to seeking a remedy.

¶22 The effect of the Employer's argument before this Court is that an employee's injury is compensable in a workers' compensation no-fault scheme even if the injury was a result of merely a slight degree of negligence, but an employer's substantially certain intentional tort received no remedy in workers' compensation or in the District Court.[10] No public interest is articulated by Employer to support any public policy for denying a course of action in District Court based upon an employer's intentional tort injuring an employee while also denying a workers' compensation remedy other than the party's reference to the power of the Legislature. This interpretation of the statutes presents an underinclusive-overinclusive constitutional invalidity issue similar to the one addressed in Torres v. Seaboard Foods, LLC.[11]

 

¶23 When the Legislature superseded Parret, as argued by Employer herein, it did not also change the definition of an "accident" or otherwise expressly make clear a substantially certain employer's intentional tort is compensable using a workers' compensation remedy. It is patently clear that the Legislature has expressed an intent to confine adjudication of accidental work-related injuries to the workers' compensation system.[12] By its expressed terms, § 3 of 85A mandates that every employer and employee shall be subject and bound to the Administrative Workers' Compensation Act, but that the "act shall only apply to claims for injuries and death based on accidents . . . ." § 3(B) (emphasis added). The key here is that the Act only covers injuries or deaths caused by accidents based on negligence where a duty of care has been breached. The Act was never intended as a remedy for intentional torts. Therefore, we find that the Legislature's definition of intentional tort codifies and galvanizes the common law right of an intentional tort action. We further find that intentional injuries have never been inside the walls of the workers' compensation scheme of Okla. Stat. tit. 85, § 12.

 

IV. CONCLUSION

¶24 We hold that the willful, deliberate, specific intent of the employer to cause injury, and those injuries that an employer knows are substantially certain to occur, are both intentional torts that are not within the scheme of the workers' compensation system or its jurisdiction. Plaintiff's additional constitutional arguments are thus not necessary to adjudicate this appeal. For the reasons expressed herein, the district court's order is reversed and the matter is remanded to the district court for further proceedings consistent with today's pronouncement.

CERTIORARI PREVIOUSLY GRANTED;
OPINION OF COURT OF CIVIL APPEALS VACATED;
DISTRICT COURT ORDER REVERSED;
CAUSE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

VOTE:

Gurich, C.J., Colbert J., Reif, S.J. and Rapp, S.J., concur;

Edmondson, J., concurs specially (by separate writing)

Darby, V.C.J., Kauger (by separate writing), Winchester (by separate writing) and Combs, JJ., dissent.

FOOTNOTES

[1] On February 21, 2014, Plaintiff filed and served notice to the Attorney General of the constitutional challenge to Okla. Stat. tit. 85, § 12 (2001 and Supp. 2010), pursuant to Okla. Stat. tit. 12, § 2024(D)(1).

[2] Section 12 limits an employer's liability to the exclusive purview of the Workers' Compensation Court, except in cases of an intentional tort. In pertinent part, that section states,

An intentional tort shall exist only when the employee is injured as a result of willful, deliberate, specific intent of the employer to cause such injury. Allegations or proof that the employer had knowledge that such injury was substantially certain to result from its conduct shall not constitute an intentional tort. The issue of whether an act is an intentional tort shall be a question of law for the court.
* * * *

Okla. Stat. tit. 85, § 12 (2001 and Supp. 2010).

[3] Article 5, § 46 of the Oklahoma Constitution prohibits local and special laws on certain subjects. In relevant part, that section states:

The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing:

* * * *
Regulating the practice or jurisdiction of, or changing the rules of evidence in judicial proceedings or inquiry before the courts, justices of the peace, sheriffs, commissioners, arbitrators, or other tribunals, or providing or changing the methods for the collection of debts, or the enforcement of judgments or prescribing the effect of judicial sales of real estate;

* * * *

For limitation of civil or criminal actions;

* * * *

Article 5, § 59 of the Oklahoma Constitution states that, "[l]aws of a general nature shall have a uniform operation throughout the State, and where a general law can be made applicable, no special law shall be enacted."

[4] Okla. Stat. tit. 85A, § 5(B)(2) is raised in companion case Farley v. City of Claremore, No. 115,400.

[5] Okla. Stat. tit. 85A, § 209(B) Limitation on Qualified Employer Liability - Exceptions - Employee Intoxication - Benefits Paid Offset Awards - Statute of Limitations, states:

B. Except as otherwise provided by its benefit plan, or applicable federal law, a qualified employer is only subject to liability in any action brought by a covered employee or his or her dependent family members for injury resulting from an occupational injury if the injury is the result of an intentional tort on the part of the qualified employer. An intentional tort shall exist only when the covered employee is injured because of willful, deliberate, specific intent of the qualified employer to cause such injury. Allegations or proof that the qualified employer had knowledge that such injury was substantially certain to result from its conduct shall not constitute an intentional tort. The issue of whether an act is an intentional tort shall be a question of law for the court or the duly appointed arbitrator, as applicable. (emphasis added).

Of note--§ 209(A) was invalidated on other grounds. Vasquez v. Dillard's Inc., 2016 OK 89, 381 P.3d 768.

[6] According to the United States Department of Labor's Accident Investigation Summary dated June 28, 2011, The Federal Occupational Safety and Health Administration proposed a penalty for Young's death in the amount of $12,600.00. Plaintiff's Answer to Defendant's Petition for Certiorari. Employer does not refute the allegation.

[7] Date of Citation: 08/05/2009
Inspection Number: 313684946
OR&SM, Inc. was cited for a violation classified as "Serious." The violation Standard number was 19260501 B10. This standard number cites to 1926.0501 "Duty to have fall protection." The B10 subsection is described as:

"Roofing work on Low-slope roofs." Except as otherwise provided in paragraph (b) of this section, each employee engaged in roofing activities on low-slope roofs, with unprotected sides and edges 6 feet (1.8 m) or more above lower levels shall be protected from falling by guardrail systems, safety net systems, personal fall arrest systems, or a combination of warning line system and guardrail system, warning line system and safety net system, or warning line system and personal fall arrest system, or warning line system and safety monitoring system. Or, on roofs 50-feet (15.25 m) or less in width (see Appendix A to subpart M of this part), the use of a safety monitoring system alone [i.e. without the warning line system] is permitted.
29 CFR § 1926.501(b)(10)

Date of Citation: 06/28/2011
Inspection Number: 314933318

OR&SM, Inc. was cited for two violations, classified as "Serious" and "Repeat." The violation Standard number was 19260501 B01. This standard number cites to 1926.0501 "Duty to have fall protection." The B01 subsection is described as:

"Unprotected sides and edges." Each employee on a walking/working surface (horizontal and vertical surface) with an unprotected side or edge which is 6 feet (1.8 m) or more above a lower level shall be protected from falling by the use of guardrail systems, safety net systems, or personal fall arrest systems.
29 CFR § 1926.501(b)(1).

[8] For the successive enactments, see: Okla. Stat. tit. 85, § 12 (2011) The Act; Okla. Stat. tit. 85, § 302(B)(2011) The Code; Okla. Stat. tit. 85A, § 5(B)(2)(2011, Supp. 2014) The Administrative Workers' Compensation Act (AWCA).

[9] Obstinacy is defined as the quality or condition of being obstinate; stubbornness. "Obstinacy" is also a synonym for "willfulness." Merriam-Webster's Dictionary.

[10] There are three statutory degrees of negligence in Oklahoma, slight, ordinary and gross. See 25 O.S. 2011 § 5 "There are three degrees of negligence, namely, slight, ordinary and gross. The latter includes the former."); 25 O.S. § 6 ("Slight negligence consists in the want of great care and diligence; ordinary negligence in the want of ordinary care and diligence; and gross negligence in the want of slight care and diligence.")

[11] 2016 OK 20, 373 P.3d 1057.

[12] See Parret v. UNICCO Serv. Co., 2005 OK 54, 127 P.3d 572, and the cases cited therein.

 

 

EDMONDSON, J., CONCURRING SPECIALLY, and joined by GURICH, C.J., and RAPP, S.J.

¶1 I write separately to explain further the analysis I believe this controversy requires. One of the parties states the implied legislative purpose or intent of 85 O.S.Supp. 2010 § 12 was to supersede the Court's holding in Parret v. UNICCO Serv. Co., 2005 OK 54, 127 P.3d 572, as such relates to the substantially certain standard used to show the intent of a defendant in a tort action. If the legislature intended to use section 12 for the purpose of superseding language in Parret, then the effort resulted in an internally inconsistent statutory scheme. Inconsistent statutes may be reconciled by courts to effectuate perceived legislative intent.[1] However, a court's reconciliation method is limited by the Oklahoma Constitution, and the Court will not interpret legislative intent in a manner to create a constitutional flaw or uncertainty in one of the statutes.[2] The argument asserting Parret was superseded by statute is based upon a view requiring workers' compensation statutes to be inconsistent and injecting constitutional invalidity.

¶2 The workers' compensation statutes state an employer's workers' compensation liability is "exclusive and in place of all other liability of the employer" and an injured employee's "rights and remedies are exclusive of all other rights and remedies of the employee."[3] The 2010 version of the statutes in effect at the time of injury[4] states a "compensable injury," other than cumulative trauma, must arise out of and in the course of the employment, and be caused by a "specific incident."[5] In the present statutes[6] a compensable workers' compensation injury must be an "accident" and "unintended."[7] Historically, an "accident" for workers' compensation law was required for liability and generally excluded injury caused by a person's intentional tort.[8] The remedies provided by the workers' compensation statutory scheme do not apply "in the case of an intentional tort," or if "the injury was caused by an intentional tort committed by the employer."[9]

 

¶3 The substantially certain standard as an evidentiary standard for showing the element of intent in an intentional tort cause of action was recognized in American jurisprudence in both the 1934 and 1965 Restatements on torts as part of a continuum of tort liability. Modern tort jurisprudence recognizes this liability continuum with intent and negligence occupying opposite ends of a spectrum with varying degrees of probability between these opposite ends.[10] The substantially certain standard is on this continuum and is used as one type of evidence to show an actor intended the result of his or her actions.[11] The Restatement (Second) of Torts states the following:

 

Intent is not, however, limited to consequences which are desired. If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result. As the probability that the consequence will follow decreases, and becomes less than substantial certainty, the actor's conduct loses the character of intent, and becomes mere recklessness as defined in § 500 [of the Restatement]. As the probability decreases further, and amounts only to a risk that the result will follow, it becomes ordinary negligence, as defined in § 282 [of the Restatement].

Restatement (Second) of Torts, § 8A cmt. b. (1965) (explanatory phrases added).

The language of a substantially certain standard is also found in the Restatement (First) of Torts § 13 (1934).[12] The substantially certain standard appears in various forms and in matters as diverse as the Model Penal Code[13] and controversies involving fidelity bonds and employee-dishonesty coverage disputes.[14] The standard has been referenced by this Court when contrasting negligence.[15] The standard was noted by this Court prior to Parret and in the context of workers' compensation when we observed application of the intent standard is not limited to an intent for the purpose of a specific consequence.[16] Parret did not invent the substantially certain standard or its use in a tort cause of action. The concept has been well-known since the 1934 Restatement.[17]

 

¶4 The 2010 version of 85 O.S. § 12 and the current version of 85A O.S. § 5 state: "Allegations or proof that the employer had knowledge that the injury was substantially certain to result from the employer's conduct shall not constitute an intentional tort." The argument is made by a party herein the Legislature may rework or change the Grand Bargain where employees lost the right to bring a District Court action against their employers in exchange for the no-fault workers' compensation remedies. Invoking the legislature's power to change the Grand Bargain is going beyond merely stating an evidentiary standard to prove an intentional tort in District Court has been statutorily changed. The party is arguing for a form of absolute immunity from legal liability for an employer when that employer intentionally injures an employee pursuant to the substantially certain standard. In other words, it is argued the Legislature may state both an employer's intentional tort is not actionable in a District Court regardless of the nature or extent of the employee intentionally injured and employee's injury caused by the employer has no remedy in the workers' compensation scheme.

 

¶5 States which have rejected the substantially certain standard for an employer's intentional conduct have explained the stricter specific intent to injure standard is acceptable for the purpose of workers' compensation law because "it is only when the employer acts with specific intent to injure the employee that the resultant injury is stripped of its accidental character."[18] In other words, in these states an employee injured from an employer's conduct satisfying a substantially certain test may obtain compensation using a statutory workers' compensation remedy because the injury is considered as accidental.[19] We have no statute cited to us showing a substantially certain intentional tort may serve as the basis for a workers' compensation claim.

¶ 6 The effect of one of the arguments before us is that an employee's injury is compensable in a workers' compensation no-fault scheme even if the injury was the result of merely a slight degree of negligence, but an employer's substantially certain intentional tort receives no remedy in workers' compensation or in the District Court.[20] No public interest is articulated to support any public policy for denying a cause of action in District Court based upon an employer's intentional tort injuring an employee while also denying a workers' compensation remedy other than the party's reference to the power of the Legislature. This interpretation of the statutes presents an underinclusive-overinclusive constitutional invalidity issue similar to the one addressed by the Court in Torres v. Seaboard Foods, LLC.[21]

 

¶7 The party's petition for certiorari also argues: "A worker who cannot prove an intentional tort under the Statutory Definition may still recover benefits under the Workers' Compensation regime." However, this statement is not supported with any statutory authority making a substantially certain intentional tort qualify for a workers' compensation claim. A necessarily implied element to this party's argument is that when the Legislature expressly denied a District Court action the Legislature also simultaneously created an implied statutory workers' compensation cause of action and remedy based upon a substantially certain intentional tort.

 

¶8 Generally, it is a matter of statutory construction whether a statute creates a cause of action by implication.[22] However, no ambiguity exists in the workers' compensation statutes on the inclusiveness of intentional torts as a workers' compensation remedy or the degrees of culpability used for remedies in either a District Court or the Workers' Compensation Commission.[23] Reading the face of the statutes and moving from the highest degree of culpability to the lowest: (1) A District Court cause of action is provided for the highest degree of culpability when there is an employer's intent to harm by causing the specific injury intended; (2) No statutory cause of action in either the District Court or Workers' Compensation Commission when there is an employer's intent to harm based upon the substantially certain standard; and (3) A workers' compensation remedy when the employer's conduct could be classified as negligent using any of the three types of negligence.[24] The statutes provide for legal remedies when the employer's conduct has higher and lesser culpability, but not when the employer's conduct falls between the two extremes. We stated in 1963 that an accidental injury for the purpose of a workers' compensation remedy is "where the injury results through some accidental means, was unexpected and undesigned, or may be the result of mere mischance or of miscalculation as to the effect of voluntary action."[25] Contemporaneous with this definition are the Court's holdings that a wilful or intentional assault upon an employee by a third person will qualify for workers' compensation when there exists a causal connection between the assault and the worker's employment.[26] More recently, the 2001 statutes provided for an employer's liability for compensation except when certain types of wilful or intentional conduct resulted in the injury, e.g., employee's wilful self-injury, employee's wilful failure to use a guard or protective device, employee's illegal use of prohibited chemicals causing the injury, and an employee's wilful or intentional behavior qualifying as a prank or horseplay causing his or injury.[27] Also in 2001, the Court explained that workers' compensation liability was based upon an "accidental injury" and contrasted this type of injury with an injury caused by an employer's "deliberate, wilful or intentional acts."[28] While the Legislature has since used an evidentiary standard in defining an employer's intentional tort, the Legislature has not created any amendments redefining the scope of an "accidental injury" as including certain types of deliberate, wilful or intentional acts. Legislative acquiescence on the definition of accidental injury and its accidental-intentional dichotomy appears to qualify as legislative approval with the Court's dichotomous definition.[29] On this argument two final points must be made. First, the statutory workers' compensation remedy is an exclusive remedy, and secondly, absent any statutorily-created ambiguity on the definition of an accidental injury I decline to turn a District Court cause of action into an implied statutory workers' compensation claim.[30]

 

¶9 When the Legislature superseded Parret, as argued by a party herein, it did not also change the definition of an "accident" or otherwise expressly make clear a substantially certain employer's intentional tort is compensable using a workers' compensation remedy. Because of this Court's past construction of what constitutes an "accident," if the Legislature was indeed superseding Parret as well as other opinions by the Court defining an accidental injury, then I would have expected either (1) a statutory amendment to what constitutes an accidental injury to include the intentional tort at issue, or (2) some indication of a public policy sufficient for the exercise of a police power and the legislative destruction of some but not all intentional tort causes of action brought by an injured party in an Oklahoma District Court while simultaneously denying a workers' compensation remedy for such injuries.

 

¶10 In Torres v. Seaboard Foods, LLC,[31] an employer argued an employee was prevented from obtaining a remedy in either a District Court or the Workers' Compensation Commission although the type or nature of injury was otherwise compensable as part of the workers' compensation statutory scheme. We reversed the order of the Commission and remanded the matter for further proceedings on the employee's workers' compensation claim when the claim was subject to a workers' compensation remedy. In the controversy before us the employer argues there is no District Court remedy for an employer's intentional tort pursuant to a statute, although the injury is otherwise compensable as a District Court remedy. I decline to read the workers' compensation statutes as providing an implied remedy for an employer's intentional torts when such is not expressly authorized by the workers' compensation statutes. There is no legally cognizable public policy championed herein for simultaneously denying an injured worker any legal remedy in District Court or the Workers' Compensation Commission when the worker is injured by the intentional conduct of an employer. While a mere doubt of unconstitutionality requires the Court to uphold a statute, when invalidity of statutory language is shown the Court has a constitutional duty not to enforce the offending language.[32] The fundamental Torres flaw I observe herein is the result of an omission in the statutory amendments, and this particular flaw is not outside the power of the Legislature to correct by the appropriate statutory enactments. The matter must be remanded to the District Court for plaintiff to proceed using a substantially certain standard for an intentional tort.

FOOTNOTES

[1] St. John Medical Center v. Bilby, 2007 OK 37, ¶ 6, 160 P.3d 978, 979 (the Court may reconcile statutory discord and ascertain legislative intent).

[2] Powers v. District Court of Tulsa County, 2009 OK 91, ¶ 28, 227 P.3d 1060, 1078 (Court construes statutes, if possible, to be consistent with constitutional provisions). Cf. Crowell v. Benson, 285 U.S. 22, 62, 52 S.Ct. 285, 76 L.Ed. 598 (1932) (when the validity of an act of the Congress is drawn in question it is a cardinal principle that the Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided).

[3] 85 O.S.Supp.2010 § 12; 85A O.S.Supp.2013 § 5(A).

[4] Substantive rights in workers' compensation law become fixed on the date of injury. Multiple Injury Trust Fund v. Coburn, 2016 OK 120, ¶ 4, 386 P.3d 628, 631; Scruggs v. Edwards, 2007 OK 6, ¶¶ 7--8, 154 P.3d 1257, 1261. The worker in this controversy was injured on June 27, 2011, and the statutes in effect on that date control this controversy.

[5] 85 O.S.Supp. 2010 § 3 (13)(a).

[6] Subsequent amendments to a statute may be used by a court when determining legislative intent. Apache Corp. v. State, ex rel. Oklahoma Tax Commission, 2004 OK 48, ¶ 3, n. 3, 98 P.3d 1061, 1068, citing Letteer v. Conservancy District No. 30, 1963 OK 218, 385 P.2d 796, 801 ("subsequent legislation may be considered as an aid in construing prior enactments upon the same subject").

[7] 85A O.S.Supp.2013 § 2(9)(a).

[8] Roberts v. Barclay, 1962 OK 38, 369 P.2d 808, 809 (worker's compensation applied only to disability or death resulting from accidental injuries, and conclusory allegations employer acted "wilfully and knowingly" without facts giving rise to such inference were insufficient to show plaintiff's fall from a scaffold was anything other than an accidental injury arising out of and in the course of employment with an exclusive worker's compensation remedy). See infra at ¶ 8 and note 26.

[9] 85 O.S.Supp.2010 § 12; 85A O.S.Supp.2013 § 5(B)(1).

[10] Walston v. Boeing Co., 181 Wash.2d 391, ¶ 26, 334 P.3d 519, 525 (2014) ("The gradations of tortious conduct can best be understood as a continuum.") citing Woodson v. Rowland, 329 N.C. 330, 341--42, 407 S.E.2d 222 (1991) (discussing the Restatement (Second) of Torts § 8A & cmt. b (1965) and W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on the Law of Torts § 8, at 35 (5th ed.1984).

[11] Halo Electronics, Inc. v. Pulse Electronics, Inc., 579 U.S. ___, ___,136 S.Ct. 1923, 1933, 195 L.Ed.2d 278 (2016) (observing "culpability is generally measured against the knowledge of the actor at the time of the challenged conduct" with citations including, but not limited to, the Restatement (Second) of Torts § 8A (1965) ("intent" denotes state of mind in which "the actor desires to cause consequences of his act" or "believes" them to be "substantially certain to result from it"), and W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts § 34, p. 212 (5th ed. 1984) (describing willful, wanton, and reckless as "look[ing] to the actor's real or supposed state of mind"), and Safeco Ins. Co. of America v. Burr, 551 U.S. 47, 69, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007), (a person is reckless if he acts "knowing or having reason to know of facts which would lead a reasonable man to realize" his actions are unreasonably risky).

[12] Restatement (First) of Torts § 13 (1934) (Battery; Harmful Contact), (Comment on Clause (a): "An act which, directly or indirectly, is the legal cause of a harmful contact with another's person makes the actor liable to the other, if (a) the act is done with the intention of bringing about a harmful or offensive contact or an apprehension thereof to the other or a third person . . . (d) Character of actor's intention. In order that an act may be done with the intention of bringing about a harmful or offensive contact or an apprehension thereof to a particular person, either the other or a third person, the act must be done for the purpose of causing the contact or apprehension or with knowledge on the part of the actor that such contact or apprehension is substantially certain to be produced."

[13] U. S. v. Bailey, 444 U.S. 394, 403-404, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980) (Court discussed the American Law Institute's Model Penal Code's approach where the ambiguous and elastic term "intent" is replaced with a hierarchy of culpable states of mind; and the different levels in this hierarchy are commonly identified, in descending order of culpability, as purpose, knowledge, recklessness, and negligence); United States v. United States Gypsum Co., 438 U.S. 422, 445, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978), (stating it is now generally accepted that a person who acts [or omits to act] intends a result of his act [or omission] under two quite different circumstances: (1) when he consciously desires that result, whatever the likelihood of that result happening from his conduct; and (2) when he knows that the result is practically certain to follow from his conduct, whatever his desire may be as to that result) quoting W. LaFave & A. Scott, Criminal Law, 196 (1972). See also the Resolution Trust Corp. v. Fid. & Deposit Co. of Md., infra at note 14.

[14] A substantially certain standard has been applied in controversies involving the issue of "manifest intent" in fidelity bonds and employee-dishonesty coverage disputes. See, e.g., Auto Lenders Acceptance Corp. v. Gentilini Ford, Inc., 181 N.J. 245, 854 A.2d 378, 390-391 (2004) quoting Resolution Trust Corp. v. Fid. & Deposit Co. of Md., 205 F.3d 615, 639 (3d Cir.2000) (stating the United States Court of Appeals for the Third Circuit had explained that the substantially certain test could be loosely analogized to the Model Penal Code's mental state "knowingly," as a person acts knowingly under the Model Penal Code if he or she is aware that "a result is practically certain to follow from his conduct, whatever his desire may be as to the result "); F.D.I.C. v. United Pacific Ins. Co., 20 F.3d 1070, 1078 (10th Cir. 1994) ("manifest intent" as a phrase used in the fidelity insurance industry since 1978 does not require that the employee actively wish for or desire a particular result; rather, manifest intent exists when a particular result is substantially certain to follow from the employee's conduct), citing Heller Int'l Corp. v. Sharp, 974 F.2d 850, 857 (7th Cir.1992), and relying on F.D.I.C. v. St. Paul Fire and Marine Ins. Co., 942 F.2d 1032, 1035 (6th Cir.1991) "although the concept of 'manifest intent' does not necessarily require that the employee actively wish for or desire a particular result, it does require more than a mere probability . . . manifest intent exists when a particular result is 'substantially certain' to follow from conduct").

[15] Moran v. City of Del City, 2003 OK 57, ¶ 11, 77 P.3d 588, 591. ("In negligence, the actor does not desire to bring about the consequences which follow, nor does he know that they are substantially certain to occur, or believe that they will."). Cf. Dayton Hudson Corp. v. American Mut. Liability Ins. Co., 1980 OK 193, 621 P.2d 1155, 1161, 16 A.L.R. 4th 1 (if a master had reason to know in advance that his servant was likely to commit the injurious act for which liability was imposed, the situation may be legally analogous to that where the insured himself commits a willful or intentional injury), citing Casualty Ins. Co. v. Welfare Finance Co., 75 F.2d 58, 60 (8th Cir. 1934); Schovanec v. Archdiocese of Oklahoma City, 2008 OK 70, ¶ 40, 188 P.3d 158, 173 ( In Dayton we used "foresee" with reference to the proximate causation element of negligence, i.e., the causal link between a particular defendant's conduct and the resulting injury of a particular plaintiff.").

[16] Davis v. CMS Continental Natural Gas, Inc., 2001 OK 33, ¶ 14, 23 P.3d 288, 294-295 (2001) ("if the actor knows that the consequences are certain, or substantially certain to occur, intent is inferred").

[17] I have omitted discussion of the appearance of different forms the standard in court opinions prior to the Restatement (First) of Torts.

[18] Limanowski v. Ashland Oil Co., Inc., 275 Ill.App.3d 115, 211 Ill.Dec. 666, 655 N.E.2d 1049 (1995) citing Mayfield v. ACME Barrel Co., 258 Ill.App.3d 32, 196 Ill.Dec. 145, 629 N.E.2d 690 (1994) (emphasis added).

[19] Lantz v. National Semiconductor Corp., 775 P.2d 937, 940 (Utah Ct.App. 1989) quoting 2A Arthur Larson, The Law of Workmen's Compensation § 68.14 at 13-46 (1988) (knowingly ordering claimant to perform an extremely dangerous job, willfully failing to provide a safe place to work, or even willfully and unlawfully violating a safety statute, this still falls short of the kind of actual intention to injure that robs the injury of its accidental nature); Helf v. Chevron U.S.A., Inc., 2009 UT 11, 203 P.3d 962, 969-975 (affirming the "intent to injure" standard in Lantz, and (1) rejecting the substantially certain standard explaining an intent to injure standard is broader than a desire or intent to bring about a particular result, (2) injuries satisfying the substantially certain test are covered by the workers' compensation remedy, (3) "intent" must be distinguished from "probability of injury" used in a substantially certain standard). Cf., Fenner v. Municipality of Anchorage, 53 P.3d 573 (Alaska 2002) (exclusive remedy of workers' compensation applied where no evidence was present showing a specific intent to injure); Kilminster v. Day Management Corp., 323 Or. 618, 919 P.2d 474, 480 (1996) (an action based upon an employer's "deliberate intention" to injure may be brought for damages over the amount payable under the state's workers' compensation remedy).

[20] There are three statutory degrees of negligence in Oklahoma, slight, ordinary, and gross. See 25 O.S.2011 § 5 ("There are three degrees of negligence, namely, slight, ordinary and gross. The latter includes the former."); 25 O.S.2011 § 6 ("Slight negligence consists in the want of great care and diligence; ordinary negligence in the want of ordinary care and diligence; and gross negligence in the want of slight care and diligence.").

[21] 2016 OK 20, 373 P.3d 1057.

[22] Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis, 444 U.S. 11, 15, 100 S.Ct. 242, 245, 62 L.Ed.2d 146 [1979] ("The question whether a statute creates a cause of action, either expressly or by implication, is basically a matter of statutory construction").

[23] The workers' compensation remedies were originally designed to function within a no-fault liability system. Evans & Associates Utility Services v. Espinosa, 2011 OK 81, ¶ 14, 264 P.3d 1190, 1195. Whether, or to what extent, the Administrative Workers' Compensation Act, 85A O.S.Supp.2013 §§ 1-106, properly altered this no-fault system by injecting elements of fault-based liability in specific instances has been raised in litigation before this Court. See, e.g., Maxwell v. Sprint, 2016 OK 41, ¶ 25, 369 P.3d 1079, 1092-1093 (statute "reinstates the concept of fault into a no-fault system"), and the separate opinion by Colbert, J., concurring in part and dissenting in part, and joined by Watt, J., at ¶ 2, 369 P.3d at 1095; and Vasquez v. Dillard's, Inc., 2016 OK 89, 381 P.3d 768, Gurich, J., concurring specially, and joined by Colbert, J., at ¶¶ 5, 15, 26, 381 P.3d at 777-778, 783, 786.

[24] See the degrees of negligence discussed infra at note 20.

[25] Rush Implement Co. v. Vaughn, 1963 OK 215, 386 P.2d 177, 179.

[26] Mullins v. Tanksleary, 1962 OK 239, 376 P.2d 590, 591-592; B & B Nursing Home v. Blair, 1972 OK 28, 496 P.2d 795. See also American Management Systems, Inc. v. Burns, 1995 OK 58, 903 P.2d 288, 290-291 (the workers' compensation injury must be based upon an employment-related risk as opposed to a purely personal risk).

[27] 85 O.S. 2001 § 11 (A). Parret, 2005 OK 54, ¶ 20, 127 P.3d at 578.

[28] Davis v. CMS Continental Natural Gas, Inc., 2001 OK 33, ¶¶ 11-13, 23 P.3d 288, 293-294.

[29] Boyle v. ASAP Energy, Inc., 2017 OK 82, n. 40, 408 P.3d 183 citing In re Estate of Dicksion, 2011 OK 96, ¶ 5, 286 P.3d 283, 294, quoting Owings v. Pool Well Service, 1992 OK 159, ¶ 8, n. 10, 843 P.2d 380, 382 ("Failure to amend a statute after its judicial construction constitutes legislative acquiescence to that construction ... 'Legislative silence, when it has the authority to speak may be considered as an understanding of legislative intent.' ").

[30] In re Initiative Petition No. 397, State Question No. 767, 2014 OK 23, ¶ 9, 326 P.3d 496, 501 (only when the legislative intent cannot be ascertained from the statutory language in cases of ambiguity or conflict does the Court utilize rules of statutory construction); Deffenbaugh v. Hudson, 1990 OK 37, 791 P.2d 84, (the statutory liability for a workers' compensation statutory claim is exclusive, citing 85 O.S.Supp.1985 § 11 and 85 O.S.Supp.1984 § 12); Tate v. Browning-Ferris, Inc., 1992 OK 72, n. 66, 833 P.2d 1218, 1230 (workers' compensation statutes express exclusivity of a created statutory remedy).

[31] 2016 OK 20, 373 P.3d 1057.

[32] Sinclair Refining Co. v. Brumett, 1954 OK 65, 267 P.2d 576, 578.

 

 

KAUGER, J., with whom COMBS, joins, dissenting:

In 2005, we decided Parrett v. Unicco Service Co., 2005 OK 54, 127 P.3d 572. The injury (death) in Parrett occurred on July 20, 1999. At that time, the exclusivity provisions of the Workers Compensation Act (the Act), 85 O.S. Supp. 1991 §12 made liability "exclusive and in place of all other liability of the employer."[1] Nevertheless, the Act did not address intentional torts[2] or negligence which was so malicious, wilful, and gross that it equated to an intentional tort.[3] Consequently, Parrett held that when the employer's knowledge that an injury was substantially certain to occur, the resulting injury would be removed from the Act's exclusive remedy provisions and the worker would be allowed to proceed in district court.[4]

In 2012, we decided Jordan v. Western Farmers Electric Cooperative, 2012 OK 94, 290 P.3d 9, wherein we again addressed the substantial certainty standard and exclusivity provisions of the Act. The claimant's claim accrued in August of 2009 which also applied the same statutory provisions as those involved in Parret, supra. I concurred specially in Jordan, noting that on August 27, 2010, the Legislature amended the Act to overrule Parret, by repealing an employee's ability to bring an intentional tort claim under the substantial certainty standard.[5]

I also expressly noted that because the accrual of the employee's action occurred in August of 2009, Parret, supra, applied rather than the 2010 statutory change. I also said that "[soon], the few cases in the pipeline, if any, will be decided and any backlog of lawsuits begun before the August 2010 Legislative change will be exhausted. At that point, Parret, supra, will be inapplicable and the 2010 Legislative changes will control." The point that is critical here is that the 2010 Legislative changes, 85 O.S. Supp. 2010 §12, while doing away with substantial certainty, also added a provision which provides:

I. If the employer has failed to secure the payment of compensation as provided in Section 51 of this act or in the case of an intentional tort, the injured employee or his or her legal representative may maintain an action either in the Workers' Compensation Court or in the district court, but not both. (Emphasis supplied).

This provision remains in the current Workers' Compensation statutes.[6]

The incident in this cause happened in 2010 after the statutory amendments granted the right of an injured party to bring a cause of action for intentional tort either before the commission or in district court. The statutes have been amended twice since 2010 and the same provision remains.

There is no need to try to equate substantial certainty with an intentional tort. Apparently, as a result of Parrett, supra, the Legislature has clearly and repeatedly enacted statutes which provide that "allegations or proof that the employer had knowledge that the injury was substantially certain to result from the employer's conduct shall not constitute an intentional tort." Rather, the Legislature replaced substantial certainty with a more certain, bright line rule of purpose to cause injury or conscious object to cause such injury.[7]

The answer to the question before us is rooted in our traditional negligence jurisprudence and the definition of intentional tort. The equaling factor here is not that substantial certainty equals an intentional tort, but rather negligence may be in such reckless disregard of the consequences or in callous indifference to the life of another that the intentional failure to perform a manifest duty may result in such a gross want of care for the rights of others that a finding of a wilful, wanton and deliberate act may amount to negligence so gross it is deemed the equivalent to evil intent justifying an action for intentional tort.[8]

This is precisely the circumstances presented by this cause. The claimant has the option of pursuing the matter before the Workers' Compensation Commission following the standards set forth by the Act, or the traditional negligence standards applied in district court, but not both.

In Adams v. Iten Biscuit Co., 1917 OK 47, ¶17, 162 P. 938, the Court very clearly described how intentional torts remained in the realm of the district court. The Court said:

It is urged that the injuries covered by the act are only those of an accidental nature, and that the employee cannot recover thereunder for a willful injury caused by his employer, and thus he is deprived of the equal protection of the laws. The act does not undertake to regulate willful injuries of the character mentioned, but leaves the injured employee to his remedy as it existed when the act was passed. Considering the various provisions of the act together, there does not seem to be any ambiguity as to its meaning. It embraces all kinds of accidental injuries not resulting in death, whether occurring from the negligence of the employer or not, arising out of and in the course of employment, but does not include willful or intentional injuries inflicted by the employer, nor injuries resulting from an intent upon the part of the employee to injure himself or another or for a willful failure to use a guard or other protection against accident required by statute or furnished pursuant to an order of the state labor commissioner. A willful or intentional injury, whether inflicted, by the employer or employee, could not be considered as accidental, and therefore is not covered by the act. If it were merely intended to cover accidental injuries for which the employee had no right of action, no reason is perceived why the Legislature would abolish the defenses of contributory negligence, negligence of a fellow servant, or assumption of risk, or why it should abrogate the employee's right of action for damages for injuries not resulting in death occurring in said hazardous occupation. The compensation afforded by the act and the procedure by which the same is determined were intended to be exclusive as to all of the injuries therein embraced, and the right of action theretofore possessed by the injured employee was abolished, leaving to him such right of action in the courts for willful injuries as he may have had prior to its passage, and the act, as thus construed, does not deprive plaintiff of the equal protection of the laws. (Emphasis supplied.)

Clearly, with the 2010 amendment to 85 O.S. §12 (now 85A §5) the Legislature did not deprive the employee equal protection of the laws because it allows intentional torts to be brought in the district court. The issue of whether an act is an intentional tort shall be a question of law.[9] The issue of negligence and the degree thereof are questions for the trier of facts.[10] The employee in this cause had the option of pursuing the action before the Workers' Compensation Commission under the pleading standards of the Workers' Compensation Act or in the District Court under the general pleading standard of the District Court.

FOOTNOTES

[1] Title 85 O.S. 1991 §12 provides:

The liability prescribed in Section 11 of this title shall be exclusive and in place of all other liability of the employer and any of his employees, any architect, professional engineer, or land surveyor retained to perform professional services on a construction project, at common law or otherwise, for such injury, loss of services, or death, to the employee, or the spouse, personal representative, parents, or dependents of the employee, or any other person. If an employer has failed to secure the payment of compensation for his injured employee, as provided for in this title, an injured employee, or his legal representatives if death results from the injury, may maintain an action in the courts for damages on account of such injury, and in such action the defendant may not plead or prove as a defense that the injury was caused by the negligence of a fellow servant, or that the employee assumed the risk of his employment, or that the injury was due to the contributory negligence of the employee; provided:

(i) The immunity created by the provisions of this section shall not extend to action by an employee, or the spouse, personal representative, parents, or dependents of the employee, or any other person against another employer, or its employees, on the same job as the injured or deceased worker where such other employer does not stand in the position of an intermediate or principal employer to the immediate employer of the injured or deceased worker;

(ii) The immunity created by the provisions of this section shall not extend to action against another employer, or its employees, on the same job as the injured or deceased worker even though such other employer may be considered as standing in the position of a special master of a loaned servant where such special master neither is the immediate employer of the injured or deceased worker nor stands in the position of an intermediate or principal employer to the immediate employer of the injured or deceased worker; and

(iii) This provision shall not be construed to abrogate the loaned servant doctrine in any respect other than that described in paragraph (ii) of this section. This section shall not be construed to relieve the employer from any other penalty provided for in this title for failure to secure the payment of compensation provided for in this title.

(iv) For the purpose of extending the immunity of this section, any architect, professional engineer, or land surveyor shall be deemed an intermediate or principal employer for services performed at or on the site of a construction project, but this immunity shall not extend to the negligent preparation of design plans and specifications.

[2] Adams v. Iten Biscuit Co., 1917 OK 47, ¶17, 162 P. 938 [The Act does not undertake to regulate willful injuries, but leaves the injured employee to the remedy as it existed when the Act was passed. A willful or intentional injury, whether inflicted, by the employer or employee, could not be considered as accidental and therefore was not covered by the Act. The compensation afforded by the Act and the procedure by which the same is determined were intended to be exclusive as to all of the injuries therein embraced, and the right of action theretofore possessed by the injured employee was abolished, leaving the employee such right of action in the courts for willful injuries as the employee may have had prior to its passage.].

[3] Fox v. Oklahoma Memorial Hosp., 1989 OK 38, ¶5, 774 P.2d 459 (Okla. 1989) [[The question is whether negligence was either so flagrant or deliberate, or so reckless that it is removed from the realm of mere negligence. The intentional failure to perform a manifest duty in reckless disregard of the consequences or in callous indifference to the life, liberty or property of another, may result in such a gross want of care for the rights of others and of the public that the finding of a wilful, wanton, deliberate act is justified.]; Mitchell v. Ford Motor Credit Co., 1984 OK 18, ¶8, 688 P.2d 42; Thiry v. Armstrong World Industries, 1983 OK 28, ¶¶25-26; Wootan v. Shaw, 1951 OK 307, ¶9, 237 P.2d 442.

[4] For example, see Price v. Howard, 2010 OK 26, ¶10, 236 P.3d 82 which was post-Parret, but pre-dated the 2010 amendments to the Act. [To remover the injured worker's claim from the exclusive remedy provisions of the Workers' Compensation Act and allow the worker to proceed in district court, nothing short of a demonstration of the employer's knowledge of the substantial certainty of injury will suffice.]

[5] The language of 85 O.S. Supp. 2010 was amended effective August 27, 2010, and later repealed, but recodified in 2011 as 85 O.S. 2011 §302 provides in pertinent part:

A. The liability prescribed in this act shall be exclusive and in place of all other liability of the employer and any of his or her employees, at common law or otherwise, for such injury, loss of services, or death, to the employee, or the spouse, personal representative, parents, or dependents of the employee, or any other person, except in the case of an intentional tort, or where the employer has failed to secure the payment of compensation for the injured employee.

B. An intentional tort shall exist only when the employee is injured as a result of willful, deliberate, specific intent of the employer to cause such injury. Allegations or proof that the employer had knowledge that such injury was substantially certain to result from the employer's conduct shall not constitute an intentional tort. The issue of whether an act is an intentional tort shall be a question of law for the Court.

[6] Title 85A Supp. 2014 §5 (the current version of 85 O.S. §12) provides in pertinent part:

I. If the employer has failed to secure the payment of compensation as provided in this act or in the case of an intentional tort, the injured employee or his or her legal representative may maintain an action either before the Commission or in the district court, but not both.

The 2019 Legislative changes to the act did not make any modifications to this section.

[7] Matthew Brown, How Exclusive is the Workers' Compensation Exclusive Remedy? 2010 Amendments to Oklahoma Workers' Compensation Statute Shoot Down Parret, Vol. 65 Okla. L. Rev. 75, 102 (2012).

[8] Fox v. Oklahoma Memorial Hosp., see note 3, supra; Mitchell v. Ford Motor Credit Co., see note 3, supra; Thiry v. Armstrong World Industries, see note 3, supra; Wootan v. Shaw, see note 3, supra.

[9] Title 85A O.S. Supp. 2014 §5B(2) provides:

B. Exclusive remedy shall not apply if: . . .

2. The injury was caused by an intentional tort committed by the employer. An intentional tort shall exist only when the employee is injured as a result of willful, deliberate, specific intent of the employer to cause such injury. Allegations or proof that the employer had knowledge that the injury was substantially certain to result from the employer's conduct shall not constitute an intentional tort. The employee shall plead facts that show it is at least as likely as it is not that the employer acted with the purpose of injuring the employee. The issue of whether an act is an intentional tort shall be a question of law.

[10] Fox v. Memorial Hospital, see note 3, supra at ¶7; Flanders v. Crane Co.,1984 OK 88, ¶10, 693 P.2d 602, 605 (Okla. 1984); Prickett v. Sulzberger & Sons Co., 1916 OK 387, ¶51, 57 Okl. 567, 157 P. 356, 365 (1916).

 

 

WINCHESTER, J., dissenting:

¶1 I respectfully dissent. When the Legislature modified 85 O.S.Supp.2010, § 12, it determined that proof of an employer's intent under a "substantial certainty" standard was insufficient to take a case outside the exclusive purview of workers' compensation jurisdiction and into an intentional tort cause of action.[1] Today's majority opinion blindly ignores the Legislature's express, unambiguous exclusion of "substantial certainty" from the definition of intentional torts falling under the exclusivity provision of the workers' compensation system.

¶2 The majority finds that a very specific portion of § 12, dealing with intentional torts, does not fall within the walls of workers' compensation jurisdiction and that, because of this, the Legislature is apparently without authority to define what constitutes an "intentional tort" for purposes of workers' compensation exclusivity. Section 12, as amended, simply clarifies when employees are covered by workers' compensation and removes "substantial certainty" as a measure for determining what constitutes an intentional tort within the confines of the workers' compensation system. It is illogical for the majority to conclude that the Legislature is constitutionally prohibited from drawing the line for workers' compensation at one point on the tort liability continuum and not another.

¶3 The Legislature made a policy choice, in response to this Court's decision in Parret v. UNICCO Service Co., 2005 OK 54, 127 P.3d 572, to remove "substantial certainty" from the definition of "intentional tort" within the workers' compensation system. The majority opinion overrides this authority and, in the process, thwarts legislative policy and preference. The Court's decision effectively curtails the Legislature's authority to define what actions fall under the workers' compensation system despite acknowledging that the "disparity between the rights and remedies of persons injured while in the course and scope of their employment and those who are injured elsewhere" has long been "properly confined within the workers' compensation system." It is not the role of this Court to question the Legislature's policy-making authority and the Legislature's ability to legislate doesn't end at the walls of the workers' compensation system. See Fent v. Oklahoma Capitol Authority, 1999 OK 64, ¶3, 984 P.2d 200, 204 (It is "firmly recognized that it is not the place of the Court, or any court, to concern itself with a statute's propriety, desirability, wisdom, or its practicality as a working proposition."); Okla. Const. art 5, § 36 ("The authority of the Legislature shall extend to all rightful subjects of legislation, and any specific grant of authority in this Constitution, upon any subject whatsoever, shall not work a restriction, limitation, or exclusion of such authority upon the same or any other subject or subjects whatsoever.")

¶4 This Court has consistently held that the "judiciary must abstain from intrusion into legislative policymaking. Fent v. Oklahoma Capitol Authority, 1999 OK 64, ¶3, 984 P.2d 200, 204. In keeping with this rule of law, we have long-recognized the Legislature's ability to alter or modify the statutory provisions of the workers' compensation system. See, e.g., Kentucky Fried Chicken of McAlester v. Snell, 2014 OK 35, ¶15, 345 P.3d 351, 356 ("It is within the prerogative of the legislature to make changes to the workers' compensation statutes.") Patterson v. Sue Estell Trucking Co., Inc., 2004 OK 66, ¶6, 95 P.3d 1087, 1088 ("The Worker's Compensation Act is in derogation of the common law and those statutes are the exclusive provisions governing benefits. Workers' eligibility for benefits, limitations on benefits, and circumstances which will cause those benefits to cease have been determined by our legislature. We may not employ rules of common law or equity to change those provisions."); Graham v. D & K Oilfield Services, Inc., 2017 OK 72, ¶20, 404 P.3d 863, 870 ("Limitations on the specific amounts of benefits to be received for a particular injury are well within the Legislature's power."); Cities Service Gas Co. v. Witt, 1972 OK 100, ¶14, 500 P.2d 288, 291 (Workers' Compensation Court possesses jurisdiction conferred by statutes and jurisdiction may not be enlarged by application of a common-law equitable estoppel).

¶5 The instant case is no different. In fact, this Court has previously acknowledged that the Legislature's revisions to § 12 effectively superseded Parret and that, thereafter, "the substantial certainty standard is unavailable to an injured worker." Tiger v. Verdigris Valley Elec. Coop., 2016 OK 74, ¶14, fn 2, 410 P.3d 1007, 1011. Likewise, in Jordan v. Western Farmers Electric Cooperative, the concurring opinion recognized: "[s]oon, the few cases in the pipeline, if any, will be decided and any backlog of lawsuits begun before the August 2010 Legislative change will be exhausted. At that point, Parret, supra, will be inapplicable and the 2010 Legislation changes will control." Jordan v. Western Farmers Electric Cooperative, 2012 OK 94, ¶7, 290 P.3d 9 (Kauger, J., concurring opinion). Nothing has changed to require a deviation from these perspectives.

¶6 Today's majority opinion revisits Parret as if the Legislature's express amendment to § 12, eliminating the "substantial certainty" standard from the intentional tort exclusivity, doesn't even exist. The majority proclaims that Parret's substantial certainty standard did not recognize "two types or levels of intentional torts." Instead, the Court finds, "substantial certainty" and "specific intent" are "one and the same" and that the "belief that one has a different level or degree of a tortious act, and thereby concluding that specific intent and substantial certainty are different animals, is a fallacy." The majority further reasons, "[s]pecific intent, like its counterpart substantial certainty, is purely a subjective fact never susceptible to direct proof." (emphasis added) This flawed reasoning flies in the face of the Legislature's clear statutory intent as well as case law recognizing the contrary.[2] See, e.g., Parret v. UNICCO Service Co., 2005 OK 54, ¶22, 127 P.3d 572, 578 ("Today, Oklahoma joins those jurisdictions which have rejected the proposition that the specific intent to harm is required for an employer's conduct to be actionable in tort.").

¶7 The plain language of Parret created two separate tests that an employee could utilize to prove an intentional tort. In Parret, the Court held that the employer must have either (1) desired to bring about the worker's injury ("specific intent") OR (2) acted with the knowledge that such injury was substantially certain to result from the employer's conduct ("substantial certainty"). Parret v. UNICCO Service Co., 2005 OK 54, ¶24, 127 P.3d 572, 579. 

¶8 The Legislature's 2010 amendment to § 12 very clearly eliminates "substantial certainty" from the workers' compensation rule of exclusivity. This Court has previously acknowledged the Legislature's power to change the common law "to reflect a change of time and circumstances." St. Paul Fire & Marine Ins. Co. v. Getty Oil Co., 1989 OK 139, ¶14, 782 P.2d 915, 918-919 (The Legislature has the power to define what constitutes an actionable wrong, including, within constitutional limits, the ability to abolish or modify common law.). Further, the workers' compensation system "is a valid exercise of the power of the Legislature." Missouri Valley Bridge Co. v. State Indus. Comm'n, 1922 OK 143, ¶14, 207 P. 562; see also Rivas v. Parkland Manor, 2000 OK 68, ¶19, 12 P.3d 452 (recognized as superseded by statute on other grounds in Evans & Associates Utility Services v. Espinosa, 2011 OK 81, 264 P.3d 1190)("The formulation of the particular elements and details of the Workers' Compensation Act clearly falls within the Legislature's province."). Section 12's plain language trumps the majority's "belief" that the Legislature didn't intend "to bifurcate the sphere of intentional torts constitutionally reserved as common law rights of actions which predate the inception of" the workers' compensation scheme.[3]

 

¶9 Today's majority opinion attempts to obfuscate the clear intent of the Legislature with erroneous, unsupported findings that "specific intent" and "substantial certainty" are one in the same. Regardless, the statutory language and its meaning are clear--proof of "substantial certainty" is insufficient to take a work-related injury outside of the workers' compensation system. The plain meaning of § 12's amendment leaves no room for this Court to reach an opposite result. I respectfully dissent.

 

FOOTNOTES

[1] Section 12, as applicable herein, pecifically provides: "An intentional tort shall exist only when the employee is injured as a result of willful, deliberate, specific intent of the employer to cause such injury. Allegations or proof that the employer had knowledge that such injury was substantially certain to result from its conduct shall not constitute an intentional tort." 85 O.S.Supp.2010, § 12 (emphasis added).

[2] As I indicated in my dissent in Parret, the substantial certainty standard is an elusive, subjective test that is used by only a minority of jurisdictions. I urged the adoption of the "true intentional tort" or "specific intent" standard which the Legislature opted to utilize as evidenced by the passage of the amendment codified in 85 O.S.Supp.2010, § 12.

[3] When examining a statute's construction, it is presumed that the Legislature has expressed its intent in the statute and that it intended what it so expressed. Comer v. Preferred Risk Mut. Ins. Co., 1999 OK 86, ¶18, 991 P.2d 1006, 1013-1014; Darnell v. Chrysler Corp., 1984 OK 57, ¶5, 687 P.2d 132, 134. Further, the Court will not assume that the Legislature has done a vain and useless act. Effect to every word and sentence must be given to avoid rendering a provision nugatory. Comer v. Preferred Risk Mut. Ins. Co., 1999 OK 86, ¶18, 991 P.2d 1006, 1013-1014.

 

 

 

 

 

 

 

 

 

 





 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Criminal Appeals Cases
 Cite
Name
Level

 1943 OK CR 117, 143 P.2d 166, 78 Okl.Cr. 1, Easley v State
Cited
Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2009 OK CIV APP 28, 207 P.3d 415, COMPSOURCE OKLAHOMA v. L & L CONSTRUCTION, INC.
Discussed
 1984 OK CIV APP 24, 684 P.2d 565, Thompson v. Madison Machinery Co., Inc.
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1989 OK 38, 774 P.2d 459, 60 OBJ 628, Fox v. Oklahoma Memorial Hosp.
Discussed
 1989 OK 139, 782 P.2d 915, 60 OBJ 2835, St. Paul Fire & Marine Ins. Co. v. Getty Oil Co.
Discussed
 1990 OK 37, 791 P.2d 84, 61 OBJ 1018, Deffenbaugh v. Hudson
Discussed
 1992 OK 72, 833 P.2d 1218, 63 OBJ 1507, Tate v. Browning-Ferris, Inc.
Discussed
 1992 OK 159, 843 P.2d 380, 63 OBJ 3503, Owings v. Pool Well Service
Discussed
 1993 OK 6, 847 P.2d 342, 64 OBJ 420, Graham v. Keuchel
Discussed
 2001 OK 33, 23 P.3d 288, 72 OBJ 1479, DAVIS v. CMS CONTINENTAL NATURAL GAS, INC
Discussed at Length
 1916 OK 387, 157 P. 356, 57 Okla. 567, PRICKETT v. SULZBERGER & SONS CO.
Discussed at Length
 1917 OK 47, 162 P. 938, 63 Okla. 52, ADAMS v. ITEN BISCUIT CO.
Discussed at Length
 1954 OK 65, 267 P.2d 576, SINCLAIR REFINING CO. v. BRUMETT
Discussed
 1962 OK 38, 369 P.2d 808, ROBERTS v. BARCLAY
Discussed at Length
 1999 OK 86, 991 P.2d 1006, 70 OBJ 3144, Comer v. Preferred Risk Mutual Ins. Co.
Discussed at Length
 1922 OK 143, 207 P. 562, 86 Okla. 209, MISSOURI VALLEY BRIDGE CO. v. STATE INDUS. COMM'N
Discussed
 1922 OK 247, 208 P. 805, 87 Okla. 21, UNITED STATES ZINC CO. v. ROSS
Discussed
 1962 OK 239, 376 P.2d 590, MULLINS v. TANKSLEARY
Discussed
 1963 OK 218, 385 P.2d 796, LETTEER v. CONSERVANCY DISTRICT NO. 30
Discussed
 1963 OK 215, 386 P.2d 177, RUSH IMPLEMENT CO. v. VAUGHN
Discussed
 1995 OK 58, 903 P.2d 288, 66 OBJ 1926, American Management Systems, Inc. v. Burns
Discussed
 1972 OK 28, 496 P.2d 795, B & B NURSING HOME v. BLAIR
Discussed
 1972 OK 100, 500 P.2d 288, CITIES SERVICE GAS COMPANY v. WITT
Discussed
 2003 OK 57, 77 P.3d 588, MORAN v. CITY OF DEL CITY
Discussed
 2004 OK 48, 98 P.3d 1061, APACHE CORP. v. STATE ex rel. OKLAHOMA TAX COMMISSION
Discussed
 2004 OK 66, 95 P.3d 1087, PATTERSON v. SUE ESTELL TRUCKING CO.
Discussed
 2005 OK 54, 127 P.3d 572, PARRET v. UNICCO SERVICE COMPANY
Discussed at Length
 2007 OK 6, 154 P.3d 1257, SCRUGGS v. EDWARDS
Discussed
 2007 OK 37, 160 P.3d 978, ST. JOHN MEDICAL CENTER v. BILBY
Discussed
 2008 OK 70, 188 P.3d 158, SCHOVANEC v. ARCHDIOCESE OF OKLAHOMA CITY
Discussed
 2009 OK 91, 227 P.3d 1060, POWERS v. DISTRICT COURT OF TULSA COUNTY
Discussed
 2010 OK 26, 236 P.3d 82, PRICE v. HOWARD
Discussed
 2011 OK 30, 258 P.3d 495, ESTRADA v. PORT CITY PROPERTIES, INC.
Discussed
 2011 OK 81, 264 P.3d 1190, EVANS & ASSOC. UTILITY SERVICES v. ESPINOSA
Discussed at Length
 2011 OK 96, 286 P.3d 283, IN THE MATTER OF THE ESTATE OF DICKSION
Discussed
 2012 OK 2, 270 P.3d 155, WILSON v. STATE ex rel. STATE ELECTION BOARD
Discussed
 2012 OK 94, 290 P.3d 9, JORDAN v. WESTERN FARMERS ELECTRIC COOPERATIVE
Discussed at Length
 2013 OK 37, 302 P.3d 789, DOUGLAS v. COX RETIREMENT PROPERTIES, INC.
Discussed
 2014 OK 23, 326 P.3d 496, IN RE: INITIATIVE PETITION NO. 397, STATE QUESTION NO. 767
Discussed
 2014 OK 35, 345 P.3d 351, KENTUCKY FRIED CHICKEN OF McALESTER v. SNELL
Discussed
 2016 OK 20, 373 P.3d 1057, TORRES v. SEABOARD FOODS, LLC
Discussed at Length
 2016 OK 41, 369 P.3d 1079, MAXWELL v. SPRINT PCS
Discussed
 2016 OK 74, 410 P.3d 1007, TIGER v. VERDIGRIS VALLEY ELECTRIC COOPERATIVE
Discussed at Length
 2016 OK 82, 377 P.3d 133, HOLLIMAN v. TWISTER DRILLING CO.
Discussed
 2016 OK 89, 381 P.3d 768, VASQUEZ v. DILLARD'S, INC.
Discussed at Length
 2016 OK 120, 386 P.3d 628, MULTIPLE INJURY TRUST FUND v. COBURN; MULTIPLE INJURY TRUST FUND v. STURDIVANT; MULTIPLE INJURY TRUST FUND v. CROSSLIN; MULTIPLE INJURY TRUST FUND v. WILLIAMS
Discussed
 2017 OK 72, 404 P.3d 863, GRAHAM v. D & K OILFIELD SERVICES
Discussed
 2017 OK 82, 408 P.3d 183, BOYLE v. ASAP ENERGY, INC.
Discussed
 2017 OK 81, 405 P.3d 681, JOHN v. SAINT FRANCIS HOSPITAL
Discussed at Length
 1980 OK 193, 621 P.2d 1155, Dayton Hudson Corp. v. American Mut. Liability Ins. Co.
Discussed
 1951 OK 307, 237 P.2d 442, 205 Okla. 283, WOOTAN v. SHAW
Discussed
 1999 OK 64, 984 P.2d 200, 70 OBJ 2100, Fent v. Oklahoma Capitol Improvement Authority
Discussed at Length
 2000 OK 68, 12 P.3d 452, 71 OBJ 2366, RIVAS v. PARKLAND MANOR
Discussed
 1983 OK 28, 661 P.2d 515, Thiry v. Armstrong World Industries
Cited
 1984 OK 18, 688 P.2d 42, Mitchell v. Ford Motor Credit Co.
Discussed
 1984 OK 57, 687 P.2d 132, Darnell v. Chrysler Corp.
Discussed
 1984 OK 88, 693 P.2d 602, Flanders v. Crane Co.
Discussed
Title 25. Definitions and General Provisions
 Cite
Name
Level

 25 O.S. 5, Three Degrees of Negligence
Discussed
 25 O.S. 6, Types of Negligence Defined
Discussed
Title 85. Workers' Compensation
 Cite
Name
Level

 85 O.S. 302, Repealed
Cited
 85 O.S. 3, Repealed
Cited
 85 O.S. 11, Repealed
Discussed
 85 O.S. 12, Repealed
Discussed at Length
Title 85A. Workers' Compensation
 Cite
Name
Level

 85A O.S. 2, Definitions
Cited
 85A O.S. 5, Exclusivity
Discussed at Length


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA